Madison Av. Baptist Church agt. The Baptist Church in Oliver street.

having then said that he was determined to dispose of his property, it was absolutely impossible for Robert Williamson, filling as he did that position of confidential adviser, to enter into any treaty for the purchase of that estate, without communicating to him every particle of information that he himself possessed with respect to its value."

The judgment of the general term should be reversed, and that of the referee affirmed, with costs.

Concurred in by all the members of the court.

---

## NEW YORK SUPERIOR COURT.

### THE MADISON AVENUE BAPTIST CHURCH agt. THE BAPTIST CHURCH IN OLIVER STREET.

The allegations of the *petition* of a *religious corporation*, presented to the court for an order to sell and convey their real estate, which states that their receipts and income are insufficient either to provide for the payment of their liabilities, or to meet current expenses, is not to be deemed *untrue* where it is shown that the current expenses and interest account of the corporation run behind their receipts and income, at the rate of $3,000 per year, even if it is claimed that a great part of the indebtedness of the church is held by members of the church, who have never called for interest upon such indebtedness—they never having released their right to claim interest.

Where such petition alleged that the plan or terms of the projected union (of the two churches, plaintiffs and defendants) being agreed on by a joint committee appointed by the *corporate bodies* respectively, it is not to be deemed untrue, so as to deprive the court of jurisdiction, where it appears that at a corporate meeting the plaintiff's corporation (who allege the invalidity of the appointment), adopted and ratified the action of its *committee* appointed to confer with the committee appointed by defendants, which agreed on the plan in question. In such case the matter stands as if the plan of union had, without the intervention of a committee, been proposed in the first instance at such corporate meeting, and then adopted.

To constitute a corporate meeting, whose acts and resolution shall be binding, there need not be present a *majority of all the corporators*. Where the corporaors are indefinite, such of them as assembled pursuant to regular call, will contitute a quorum for the transaction of business, and a *majority of said quorum* can pass a resolution.

The fact that some persons were present at the meeting who *were not corporators*, will not vitiate the proceedings of the meeting, unless it appears that such persons voted, and that their votes were necessary to carry the resolutions which were passed.

Whether the number of *pew hirers* was more or less than the number stated in the

*petition,* was of no consequence, since the allegation as to consent of the pew hirers might be stricken out of the petition without affecting the jurisdiction of the court.

Where, although it might be that a majority of the whole number of the plaintiff's *corporators* did not affirmatively authorize the proceedings, yet the evidence did not show that more than four or five objected. The corporate meeting was, therefore, ample authority for the *trustees* to make the application to the court; and the trustees having under that authority, passed a resolution directing the application to be made, it was unnecessary to show an authority by a majority of the whole number of corporators.

*Heard Special Term, October,* 1866. *Decided January,* 1867.

UPON a former trial of this action, there were four objections raised to the order made by the supreme court, authorizing the conveyance by plaintiffs to defendants of the property in question.

Those four objections were:

*First.* That the court had the power to order only a sale.

*Second.* That the application was made by the trustees and not by the corporation.

*Third.* That the order did not direct the application of the money arising from the sale.

*Fourth.* That the transaction produced a dissolution and abandonment of the plaintiff's corporation, and not a continuance of it for the purposes of its organization.

The justice before whom the former trial was had, held these objections to be valid, and excluded evidence of such supreme court proceedings. Judgment was consequently rendered for plaintiffs. Upon an appeal from such judgment, the general term held that each one of said four objections was untenable, reversed the judgment and ordered a new trial, on the ground that error was committed in not admitting in evidence the record of the supreme court proceedings (*Reported* 30 *How. Pr. R.* 455).

C. C. LANGDELL and J. T. BRADY, *for plaintiffs.*

WM. R. MARTIN, W. F. ALLEN, and

L. B. WOODRUFF, *for defendants.*

JONES, J. The new trial thus ordered, came on before me.

The general term has decided that the allegations in the petition, if true, are sufficient to give the supreme court jurisdiction and authority to make the order in question.

On the trial before me, however, plaintiffs introduced testimony with the view of showing that divers of the allegations of the petition were untrue, and claimed that if these allegations were untrue, the supreme court obtained no jurisdiction.

The allegations respecting which evidence was given, are :

*First.* As to the inability of plaintiffs' corporation to pay the liabilities, or meet the current expenses of the church.

*Second.* As to the plan or terms of the projected union being agreed on by a joint committee appointed by the *corporate bodies* respectively.

*Third.* As to whether there were a sufficient number of corporators present at the meeting of September 29, 1862, to make the action of that meeting binding.

*Fourth.* As to there being twenty-eight pew owners and thirty-nine pew hirers.

Plaintiffs claim that the allegations of the petition in these respects are untrue. I will examine the proof.

*First.* The current expenses of the church were, $4,800.00
Interest on the mortgage debt.................   4,235.00
                                                 _____
                                                 $9,035.00
Receipts from all sources......................  5,900.00
                                                 _____
                                                 $3,135.00

In addition to this, there were liabilities not secured by mortgage (some of them in litigation),
amounting to about...................... $12,000,00
Thus we have an annual excess of current expenses over receipts of $3,100, and liabilities (not secured by mortgage) amounting to $12,000. There was no income to meet this excess, and pay off this liability. There were no funds, and no resources, other than a resort to a sale or mortgage of the church edifice, wherewith to provide for the payment of the liability, and for the keeping down of this excess.

Under this state of facts, I think it may well be said, in the language of the petition, " that they are unable to pay their liabilities, or meet the current expenses of the church."

There is no doubt that by a sale of the church property, funds sufficient to meet the liabilities could be obtained. One of the objects of the application was, by the union of the two churches, the conveyance of the plaintiffs' property to defendants, and the bringing in of the defendants' property, to provide for the payment of these liabilities, and so to increase the prosperity of the united church, as that the current receipts would keep down the current expenses, including therein interest on the mortgage debt.

The petitioners do not say that their property if thus sold, would not be sufficient to discharge their liabilities ; all they say is, that their receipts and income are insufficient, either to provide for the payment of their liabilities or to meet current expenses.

I think the proof sustains this allegation. Indeed, if they kept on for a period of years running behind in their current expenses and interest account, at the rate of $3,000 a year, the result would be that after a while the proceeds of a sale would not discharge their liabilities.

The plaintiffs claim that as a great part of an indebtedness of $18,000 is held by members of this church, who have not called for interest, such interest cannot be regarded as a liability. This indebtedness is, however, secured by bonds bearing interest on their face. The holders have never released their right to claim interest, and can at any time call for the payment of current as well as back interest.

*Second.* The evidence shows that the committee appointed by plaintiffs to confer with a committee of defendants, was not appointed by the *corporate body.*

I do not, however, perceive that the jurisdiction of the court depends in any degree on this allegation. The only question in this respect is, whether at a corporate meeting the plaintiffs' corporation adopted and ratified the action of its committee. If so, then the matter stands as if the plan of union had, without the intervention of a committee, been

proposed in the first instance at such corporate meeting and then adopted. The plan in question was adopted at an alleged corporate meeting of plaintiffs' corporation. This brings me to the consideration as to whether the action of that meeting was binding.

*Third.* There were but twenty corporators present at that meeting, far less than a majority of all the corporators.

The plaintiffs claim that to constitute a corporate meeting, whose acts and resolution shall be binding, there must be present at least a majority of all the corporators.

I think not. Where the corporators are indefinite, as in this case, then such of them as assemble pursuant to regular call, will constitute a quorum for the transaction of business, and a majority of said quorum can pass a resolution.

It is objected that some persons were present at the meeting who were not corporators.

That fact will not vitiate the proceedings of the meeting, unless it appears that such persons voted, and that their votes were necessary to carry the resolutions which were passed.

*Fourth.* The evidence sustains the allegation that there were but twenty-eight pew owners. As to whether there were more than thirty-nine pew hirers, does not satisfactorily appear on the evidence. The records of the church seem to have been loosely kept, inasmuch as no record of pew owners or of pew hirers, containing appropriate data as to when the parties became such owners and hirers, and as to when they ceased to be such, was produced in evidence.

The evidence as to the number of pew hirers, consists in the recollection of witnesses, aided by entries of payments for pew rents, giving the dates and amounts of the payments, with the number of the pew, and the name of the person paying, without indicating for what period of time the payments were made.

I think this evidence is insufficient to overcome the statement in the petition, verified by the president and secretary of the board of trustees, at a time when the facts must have

been fresher in their minds than they could possibly have been in the minds of the witnesses at the trial.

Whether the number of pew hirers was thirty-nine or fifty-two, is not important, since the allegation as to consent of the pew hirers may be stricken out of the petition without affecting the jurisdiction of the court.

A great amount of evidence was taken as to the number of the corporators of plaintiffs' corporation. I have deemed it unnecessary to determine the number, for although it may be that a majority of the whole of the members did not affirmatively authorize the proceedings, yet the evidence does not show that more than four or five objected. If I am right in my view that the resolution of the meeting of 29th September, was ample authority for the trustees to make this application, then the trustees, having under that authority, passed a resolution directing the application to be made, it is unnecessary to show an authority by a majority of the whole number of corporators. If it appeared in evidence that a majority of the whole number objected to the application being made, then other questions would arise, which it is now unnecessary to discuss.

I have thus considered all the grounds arising out of the evidence *dehors* the supreme court record, upon which it is claimed that that court had no jurisdiction, and have come to the conclusion that the claim of no jurisdiction is untenable on any one or all of such grounds.

Plaintiffs' counsel, however, claims that the insertion in the petition of the allegations just considered, operated as a fraud on the supreme court, and, therefore, the order in question was void.

The evidence before me establishes the truth of all the allegations except two. One of these two is the allegation as to the number of pew hirers. On this I have held that the evidence is too unsatisfactory for me to decide against the truth of the petition. The other is the allegation that the committee appointed by the plaintiffs was appointed by the corporate body. The evidence shows a committee was appointed by plaintiffs; that said committee conferred with

a committee appointed by defendants, and agreed on the plan in question. It was a mere mistake, and perhaps an error of judgment, in stating that the committee was appointed by the corporate body. The mistake is too immaterial to justify a holding that by reason thereof, the order is void, as having been obtained by fraud.

There certainly was no fraud intended, and, so far as I can see, no actual or legal fraud has been shown.

Entertaining these views, it is not necessary to consider whether, after a party has acted in good faith upon an order made by a court upon the application of the trustees of a corporation, such corporation can claim the order to be void by reason of its trustees having committed a fraud on the court; or the more general question, whether one court has any right to hold the judgment or orders of another court to be null and void by reason of a deceit having been practiced on that court, or if they have any such right, then under what circumstances, or in whose favor, it is to be exercised.

Judgment for defendants, with costs.